I am here, Your Honor. Very good. Please proceed. May it please the Court, it's clear during a public health emergency, the Governor may act in the absence of science. Courts across the country have almost uniformly given officials great latitude to act in the early days of the pandemic. But the Governor has appeared before the Court below and this Court and argued that he may act in ignorance of science, that he has no duty to demonstrate that his emergency public health orders have any factual basis, even when such facts exist and are at the government's fingertips, that he has no duty to even listen to his own medical experts, that the Court must accept... It's with respect to likelihood of success on the margin. Thank you, Your Honor. The standard should be the Jacobson test for real or substantial relation. Okay. So what we know, you seem to think that common sense shouldn't be applied here. But we know that the coronavirus is a communicable disease. We know that it's transmitted when people are close together. We know that there's more transmission indoors than outdoors. We know that you're more likely to transmit it to a stranger indoors than to a member of your own pod. Your papers say that there'll be more people in the gram after 10 o'clock rather than fewer. So what more could we possibly want to know in order to meet the test? Your Honor, all we're asking for is the governor to come and say, we've seen indoor dining contribute this to this. We see it happen at this time, and we have reason to think that putting the time at an earlier closure time will actually reduce the risk. We're not arguing that common sense cannot apply. We're just arguing that it's not necessarily common sense that closing earlier will reduce cases. And part of the reason that might be true, that might be true, but we're talking about the constitution here to sort of meet the constitution, the standards set out to make this constitutionally all right. He has to do all these things. We're not asking for a lot, Your Honor. We're asking for- We're asking for an injunction. We're asking for an injunction because again, the governor has not justified his restriction with data and facts. So you say- Mr. Corbett. Sorry. Go ahead, Judge. Mr. Corbett, if we were to enter the injunction you asked, would that preclude the governor from imposing stricter standards on opening and interpersonal presence, the kind of things that he's addressed in this rule, even in the face of the skyrocketing numbers that are now before us and that were not before us when you filed your case in October? Wouldn't that prevent him from making stricter standards? Your Honor, it could prevent some stricter rules, but not others. Part of the basis for our challenge- No, wait a second. Why wouldn't it prevent him from tightening up restrictions even further, even knowing that today in the city of New York, we have an increase of 65%- I'm looking at the New York Times- there's been an increase of 65% of positive cases from the average two weeks earlier. Why would we ever tie the governor's hands, where the basic scientific facts of communicability and aerosol transmission are very well known? Yes, Your Honor, I assure you I'm trying to answer your question as directly and quickly as possible. Part of the reason that we are saying that this is unconstitutional is that he's arbitrarily singled out New York City versus the rest of the state. He's arbitrarily selected a time without a basis. If the government wanted to put out stricter rules, it is possible he could do so, so long as he does it with some kind of foundation, with some kind of scientific facts, and does it evenly enough so that we're not left questioning, why on earth would you do it just for New York City, where we have a lower transmission count at the moment than a lot of Western New York counties, and leave Western New York able to continue open at 50% capacity all night long? Mr. Corbett, do you think that the Constitution requires exact tailoring and highly specific data more than is available here? I mean, when you look for, you want a double-blind kind of evaluation based on data about bars in New York versus bars in Buffalo? I mean, really, given the urgency of the situation and the changing data, increasing infection rates, I find it very difficult to believe that you've come forward asking for injunctive relief, making a substantive due process constitutional claim, as Judge Eaton points out, in the face of what's a huge national emergency. What kind of scientific data, and the scientific data that was available in October may have nothing to do with the situation in December, other than the fact of establishing communicability. What would satisfy your standard? Your Honor, the governor has data at his fingertips that shows where the coronavirus is being transmitted. He knows the zip codes people have it in, he knows within zip codes down to blocks. He's produced these maps of exactly where coronavirus gets transmitted. And when it happens, the state sends contact tracing people to speak with people that were who they've interacted with that was infected. And from that, they can see if it is likely that the transmission happens at, say, a restaurant versus at a small gathering. The data that the government has available to it is extensive. We're not asking to see all of it. We're not asking that there be a perfect fit. We're just asking that the governor be required to produce something. And so far, he has produced nothing. And your basis for asking him to produce whatever it is you're asking him to produce is what? The real or substantial relation test. In order for something to have a real or substantial relation, the court needs to look at the basis for the restriction. Knowing how it's transmitted and the generally that it's transmitted, more likely to be transmitted indoors and outdoors, more likely to be transmitted to people who don't know each other than people who do know each other. That's not enough. And more likely to be transmitted at 1 a.m. than 11 p.m.? That doesn't seem like common sense. You have said that there are going to be more people in your restaurant after 10 o'clock. You said that, not me. What I'm trying to say, look, let's say a restaurant has 100 customers that come in in a day, right? And we now close the restaurant earlier. Some of those customers simply won't come to the restaurant anymore, but many will, instead of coming during that later time, decide to come earlier. Now we have more customers at a given time. How do you know that? Well, people need to eat, Your Honor. Well, if you take a poll, they could eat elsewhere. Well, they could eat elsewhere, but not at a restaurant anymore. Sir, you don't know. Your Honor, you know, I'm speculating here, of course, but my point is, so is the governor, and he shouldn't be because he has the data and we don't. You're asking for data of a specificity that, it seems to me, makes no sense in the context of a rapidly changing situation, where they, you know, it seems to me that you're asking for data that is changing weekly, and that while he may have it by zip code, contact tracing doesn't happen overnight, so that you could tell whether diners or restaurants or bars necessarily are one way or another in terms of communicability. And to enter an injunction would be to tie the governor's hands in responding to a rapidly changing situation. It seems to me that it's very misleading to assert that he is making these restrictions based on no science. There's a lot of science that has gone into assessing communicability and indoors rather than outdoor spaces and so on, and I find it challenging to look for a constitutional violation in what the governor has done in a difficult situation. So there's no arguing that small businesses and restaurants in particular are suffering vitally. That's partially a function of what they offer to people, and it's a very difficult situation for everyone. But we understand your substantive due process argument. My main concern, and I don't know about your team's, but it has to do with tying the governor's hands where the situation is changing so quickly and where, as I've said, there's been an increase of 65% in positive cases from the average two weeks earlier. But in any event, your time has expired, and we'll hear from the state. Good afternoon, Your Honors, and may it please the Court. Sarah Rosenbluth for Appellee. The Midnight Service Rule, which has changed in two relevant respects since this motion was briefed, passes muster under either the Jacobson test or traditional rational pieces review. First, the Court should be aware that under the current version of the rule, the And the rule applies statewide rather than just in New York City, thus mooting plaintiff's argument regarding the differential treatment of the city compared to the rest of the state. Additionally, under Executive Order 202.74, gatherings in private residences are now capped at 10 rather than 50. Most recently, the governor announced yesterday that indoor dining in New York City could be shut down entirely as soon as Monday if hospitalization rates do not stabilize. Turning to the merits of the motion, contrary to plaintiff's argument, it is not the governor's burden to demonstrate the rationality of the rule, but plaintiff's burden to show that it is irrational or lacks any real or substantial relation to the protection of public health. To address his argument in particular, Ms. Rosenbluth, about the scientific basis for making these restrictions, there is an element that seems somewhat drawn from thin air about stopping at 10, stopping at 12. You do have data available to you about zip codes. And the consequences for these small restaurants in particular, but small businesses, are dire. And as you've heard, I've defended them or asked about them based on general information about communicability. But doesn't the governor have a higher burden than looking at just communicability? I mean, what about transmissions in restaurants in particular? We know we've now been in this for eight months or longer. Do you have data or is it available about restaurant-based transmissions that support the governor's decisions that are so dire for these businesses? Yes, Your Honor. Dr. Dufour testified at the hearing concerning a document showing clusters of outbreaks that have been tied to restaurants. I don't believe that document itself is in the record, but that sort of, you know, tracking those cases as well as the general evolving scientific consensus on how the virus is transmitted, including the particular risk posed by only sort of deepened over the recent months, supports the restriction here. What about the differential between the western New York and the city, which I gather has been eradicated now, but the governor is apparently free to reimpose? Sure. I mean, there are cluster zones that are applicable to different parts of the state, and that is, you know, the more sort of granular level of zip code data that my opponent references, and western New York, parts of western New York and parts of Buffalo in particular are subject to cluster zones right now. So that does kind of drill down on a more granular level to avoid imposing the most severe restrictions on areas that have not suffered the worst outbreaks. Could you also explain how frequently the data is updated? Is this in terms of constantly updated or, you know, daily, once a week? How do you tailor the drastic restrictions that are being placed on small businesses and individuals? Is it based on recent data, or does the data get outdated? I believe the data gets updated on a daily basis. Certainly the governor right now is looking at daily rates and analyzing what is appropriate for indoor dining in the next few days. As for the cluster zones, that's not at issue in this case, and I can't speak to the precise nature of how those are drawn. But the data, I believe, I'd have to confirm, but I believe the data is updated daily, and certainly, you know, in this fast-moving environment, there's an effort to be made, there's an effort being made to make sure that the restrictions are  And that is the reason for, you know, in particular, the hospitalization rates are being monitored, and that rate in particular is going to drive decision-making regarding the continuation of indoor dining. And what about contact tracing kind of data that Mr. Corbett was pointing to? I mean, we know we have incidence rate and hospitalization rate and so on, but is tailor more precisely to actual incidence? I believe so, Your Honor. I can't make a representation right now as to specifically how that data will be used in the future, but certainly there is contact tracing going on, and we would make every effort to leverage that in tailoring restrictions. But as Your Honor mentioned, of course, the situation is getting worse, and I don't think the plaintiff has made the requisite showing. Again, the plaintiff is attempting to flip the burden here. There is a rational basis, certainly a real and substantial relationship between this restriction and the protection of public health, and it is plaintiff's and he has not borne that burden, let alone borne a burden that would justify the extraordinary remedy of an injunction pending appeal. You phrased the standard as the absence of any connection. What you're saying is all the governor needs to show is some kind of connection? I thought we had a real and substantial connection from Jacobson. That's right. The test is a real or substantial relation to public health. My point is simply that it is plaintiff's burden to show that that standard has not been met here. So I suppose, right, to be more precise, it wouldn't be the absence of any relationship, but the absence of a real or substantial relation to the protection of public health. Okay. Excuse me. You have one minute left. So in conclusion, I think an alternative ground here as well is just to note that plaintiff, well, I'll leave that aside for the time being. To conclude, the rule rationally incorporates common-sense assumptions about human behavior and is based on the evolving scientific consensus concerning how the virus is transmitted and rationally responds to that transmission potential by reducing the total number of hours that individuals can spend congregating in places that facilitate the spread of the virus. Unless the court has further questions, I will rest on the brief. Thank you very much. I think we have the arguments. We will reserve decision for the moment, confer with Judge Cabranes, and try to get to a decision as soon as possible. Thank you very much. Thank you.